Good morning. Good morning, Your Honors. My name is Lisa Cantor. I'm here on behalf of the appellant, Vicki Welch, and I'm going to try to save five minutes of my time for rebuttal. Okay. This is a case about an attorney fee award and an ERISA matter in which the defendant insurance company completely capitulated on all claims in the complaint. The only issue for the judge to decide was the amount of attorney's fees. A modest request was made of approximately $40,000. The district court cut that request to about a quarter of that amount, about $10,000. The court did this by cutting the hourly rate requested, making specific reductions in hours requested, and finally using what has been known as the meat axe approach to apply two 20 percent across-the-board reductions, one for block billing, one for quarter-hour increments. This court has recently issued an order to the parties asking us to address the issue of whether the district court's reliance on language in a bar committee statement justified the meat axe reduction, the 20 percent for block billing and the 20 percent for quarter-hour increments. I don't think we used the term meat axe. No, you did not. But the cases you cited did. You cited us to two cases, Gates and Furland. And if it's all right, I'd like to start by addressing that issue because it seems to be on the court's mind. The simple answer to the question is no. The reliance on that committee report was not justified under that case law and the related cases. But not because this court cannot determine what the district court did here. Those cases focused a lot on procedure and remanded back to the district courts because it was unclear to this court what the district court had done. Here the procedural part of it seems to have been complied with. In other words, Gates and Furland teach us that when a district court is faced with an attorney fee request, it must independently review the request. It must set forth a clear and concise explanation of the reasons for making any cut. And if it is going to use a percentage, it must set forth a clear and concise explanation of how it chose that percentage. Here, again, unlike in Gates and Furland, the district court started by looking at the fee bill. And clearly this district court was not happy with the prospect of having to give any attorney's fees. I think that is clear from the award. If the district court had wanted to give you none, then the district court would have given you zero. But the district court obviously felt that it was excessive, so you do have that. Right. Now there is some block billing though, correct? There is some billing that contains more than one explanation in an item. But I think we have to be careful when we're talking about block billing, because block billing means you're doing discrete tasks and giving one lump sum. So, for example, if I were to bill my preparation for this oral argument, I could say prepare for oral argument and give you an hour amount. Or I could give you all the individual things I did to prepare. But that wouldn't be block billing. That would just be explaining what I've done. In this case, if I could give you an example, there's an entry in this case that talks about plaintiff's counsel's attempts to comply with the ADR pilot program. And there's four or five descriptions in there. She called the court clerk. She called the head of the pilot program. She called opposing counsel. She wrote to opposing counsel about what the requirements were. That's not block billing. That's just description. We have 24 entries out of 90 that have multiple descriptions. We have a district court who says in the very beginning, I don't like block billing, and here's the one block billing that I have a problem with, and I'm going to cut you for that one because I can't tell what you did. Because you're saying you did a mandatory case management memo, and you're saying you did email to opposing counsel, and those to me are kind of two discrete things, so I'm going to cut five hours for that. And wasn't there one in there on discovery too? There was an individual cut on discovery, yes. And so why on that one? Why isn't that, if you look at that and you say, well, you didn't need to do, I mean, you know, the court is presumed to know how long, on some level, how long certain things take, or I think that that's too much time, and I think it went, what, from 8.5 to? It was four hours for discovery. Right. And so why isn't that reasonable? I think it's not. I mean, I know you don't agree with it, but, you know, but when you do something like that where just because you don't agree with something doesn't mean that the court can't do it and say, well, I don't think you need to do that much, or that's excessive. I think the problem I have with it is that the court said you can't do any discovery at all because this is an ERISA case. Now, we have a recent Ninth Circuit decision called a baby that really changes the atmosphere of discovery in ERISA cases, but that case was not decided before this decision was made on this fee bill. The problem is that if you look at the facts that were presented to the district court, the fundamental issue in an ERISA case is what does the plan say? What does the claim file say? We never got a plan. We never got a summary plan description. We got three different versions of it. And the critical issue was that the client, the claimant, had information that she was entitled to benefits for ten years. We were trying to resolve that issue with the defendant to get the plan documents and see what it says. We got three irrelevant plan documents which said five years, not ten years. But how do we resolve that issue when we don't have what we're supposed to be getting from the other side? Ultimately, MetLife filed what was supposed to be the claim file with the district court, referred to pages that supposedly had discretionary language and resolved some of the issues. Those pages are nowhere in the district court file, and they weren't served on us. What are you suggesting the district court should have done with regard to your statements about why discovery was necessary and what we're supposed to do in light of the record as it exists? I'm suggesting that when the district court says four hours to propound some written discovery and send some depo notices are not allowed because no discovery is allowed at all. But that's an implicit discretion. That's what he said? Yes. Not allowed at all? I thought he said it was unnecessary. Well, he said discovery was unnecessary. Well, that's not no discovery is allowed. He's made a finding that in his judgment it wasn't necessary. Okay. So there's a big difference, counsel. You have to be a little careful here. I understand, Your Honor. If he made a blanket rule, now we're talking about block billing, and there's a blanket rule in that and there's a blanket rule that he doesn't like quarter-hour billing. But now we're talking about a discrete factual issue that's entrusted to the district court, which is to determine based on his or her, in this case, his knowledge of the case. Now, if you're saying his knowledge was imperfect because he didn't understand why, in this case, discovery was necessary, my question is what ought to be the rule? What is it that you want us to do with respect to what he actually did in this case? Because he certainly didn't rule it out as no discovery is permissible in a RISA case. No, he said that it's not clear that any discovery here was appropriate. And I'm sorry if I overstated. Right, because you've got a couple of things where he goes from 13 to 9, 8.5 to 4 or 4.5 or whatever. And our problem is not so much with those, as I started to say, with those individual cuttings. Well, could you just answer my question, which is on discovery, which you've said was inappropriate by the district court, what are we supposed to do with that? Reverse the cut of four hours. Based on what? Based on the record. Based on your argument to us that we substitute our judgment for the district court? Well, no. My argument is that in our view it's an abusive discretion to cut any attempts at discovery when you can't even get the simple documents you need to prosecute an RISA case. So we should make the findings of fact up here? No, I don't think that's appropriate. But, again, this is an abusive discretion standard, and my argument is that's an abusive discretion. Okay. Now, let's get back to the block billing. We sort of got off into a specific entry, but not all of the hours were block billed, correct? Correct. Okay. So to the extent they were block billed, where there were multiple entries for a unit of billable time, that the tasks were not just sequential following down one particular lead in the example you gave, is your argument that a district court cannot discount or ignore those if they're block billed? No. I think a district court can go through the bill, as this district court did, and make specific reductions when it finds it cannot figure out what was done in that period of time. So as to those, what the district court should have said, in your view, is there are these entries which are multiple tasks, block billed, I disallow them? Disallow or reduce them, whatever the district court in its discretion has decided. I think it would be if it was block billing, yes. And, again, the standard, I think, is set by the mock court, which is a southern district court. It's not necessarily that the court can't figure out what was done, but the question is, is there enough information for the district court to know what was done in excess of it? Well, clearly the district court, a lot of us have gone through billing, and we know what it says, this district judge, I'm sure. And I don't know how you expect a judge looking at a, much less a client at times, to figure out what it is that the client is being billed for if you have multiple entries. Absent your telling, that is the fee claimant telling the district court, what percentage of whatever those various entries accounted for what amount of time, I don't know what guidelines the district court is supposed to apply in deciding how much to allow. Now, I suppose the district court can say, you know, I've got three hours of multiple tasks here. I'm going to assume that half an hour of that was legitimate, and I'll allow half an hour against three hours. And your position would be then that's within the district court's discretion? It is. And let me just say two other comments. The real problem with block billing in a lot of these cases is that we have multiple claims where a claimant is successful on one of multiple claims. That's when block billing is really a problem for a district court, because when you're working on four different claims and you're putting it in one, how is the district court supposed to know what you've done? The better practice is not to block bill. We no longer block bill. It's not a good practice. I was going to suggest that that's part of the issue here, is that the ones who are most in control of what the district court will know are the people who prepare the bills in the first instance. Absolutely. And if I could turn back the clock, there would be no block billing and no quarter-hour billing in this file either. I would like to ‑‑ I just wanted to be able to respond to the court's concern about the or questions about the 20 percent, the use of the 20 percent. I understand. You have responded to that. You requested, I think, $400 an hour, and that was reduced. Does that rate include the risk of taking cases on a contingency basis? Not in the way the district court was concerned about it. In other words, what we were trying to prove was prevailing market rate, which is what we have to prove. The prevailing market rate in an ERISA case for plaintiff's lawyers has to account for the fact that most plaintiff's ERISA lawyers don't get paid by the hour by their claimants because they can't afford it. Is that one of the factors that affects the market rate? Probably. The declaration that the district court referred to in an unrelated case had to do with the issue of oftentimes we find the defense counsel put in their bills and say, well, I only charge $250 or $300 an hour. Why are you charging more than we do? And first of all, there's Ninth Circuit authority that says it doesn't really matter what the defense counsel charges. It's the prevailing market rate. But the other answer is that to an extent the market is driven by the fact that plaintiff's ERISA lawyers don't get paid a lot of the time. And that has to affect what the hourly rate is. We cannot ask for a contingent multiplier on our lodestar, but nor could the district court reduce our bill because we're on a contingency basis with our client. But I think it is a reality. And also, too, I thought it was a he, but it's probably you, that there were the district court cut out conferencing with Cantor. No, that's my partner. So it is he. Yes, it is he. Okay, it is he then. And because I guess the district court basically found that the case wasn't that complicated and felt that he had not done anything more than conference with Collins on that, and so why is that an abuse of discretion on that? Well, again, as Judge Fishers pointed out, the district court has to make some determinations here based on his evaluation of the case. However, I don't know of any federal court litigator who never confers with another client in their office or if they're a solo with somebody else to try to run things by, bounce ideas off of them. I think especially in the complicated ERISA arena, we need to confer with one another. What was cut here was every single minute of the second lawyer conferring. But, see, you're saying it's complicated and the judge said it wasn't complicated. I understand that. So that, I mean, we have to deal with that too. Well, but I think there are a lot of Ninth Circuit and district court cases that recognize the complex nature of ERISA cases in general. You know, ERISA is not easy. The case law changes all the time. Oh, we know that. We're not always happy when we see them. Well, neither am I, but I have to deal with it. And it's very factual intensive. Now, in this case, this judge had not seen us other than at the scheduling conference because the defendant capitulated and filed a notice to reinstate benefits. The first time the judge heard from us again was when we put in a proposed judgment. So from his perspective, we had not bothered him very much. I agree with that. But in the context of putting the motion in, we have an obligation to prove the Hummel factors and prove why we're entitled to benefits, and we have to go through the bad faith aspects of the denial because, as you said, he could give us nothing. So it may seem to him like we were able to resolve it without his intervention, but from our perspective, there was a lot of work going on, and the fundamental work was just the basics of trying to figure out what this plan said and where it was because we never got it. I have about three minutes left. Why don't you save it? Thank you. Good morning, Your Honors. It's an honor and a pleasure to be here today in front of you. Well, it may be an honor, and we'll try and make it a pleasure. No matter how it turns out, sir, I thank you for that. Five things in particular stand out to me about opposing counsel's arguments, and I would like to address them in turn. First of all, counsel began her argument by asserting that defendants completely capitulated in this lawsuit. In some respects, she may be right. The reality is we never wanted to be involved in this lawsuit at all. The very first thing that I did in this lawsuit was pick up the phone and call opposing counsel and say to them there is so little in benefits at issue here. Let's resolve this prior to engaging in anything in this lawsuit. Three years later, here we are in the Ninth Circuit arguing specific issues about what transpired. So we didn't completely capitulate. We didn't want anything to do with this lawsuit from its inception. The second point I'd like to address is it appears from counsel's argument that she's trying to shift the burden from the plaintiff to prove to the district court that they are entitled to fees, to the district court to review their bills with such incredible specificity that the district court thereby can determine whether or not the billing entries are correct. The burden, as we know, is on the plaintiff to show the district court that they are entitled to the benefits, excuse me, the fees that they seek. The burden is not on the district court to go through each and every entry in a fee motion and determine whether or not those are accurate. Well, what about, though, you know, I think the one thing that probably jumps up right away, and I think that the bar generally criticizes judges maybe who have never been in private practice or done billing from the standpoint that you say, well, okay, I'm just going to reduce it from $400 an hour to $250 an hour because I've never made $250 an hour or whatever. You know, what evidence was there that $400 an hour was not a reasonable rate? Well, the evidence was what the district court had previously seen in his own courtroom. But was that, as the appellant's saying, you know, defense counsel that are getting, you know, insurance company rates as far as that goes? No. I mean, I remember I was a trial judge 10 years ago, and there were people coming in $400 an hour then that had certain specializations. Well, in our briefing to the district court, we did not discuss our rates. I think it's generally acknowledged that defendant's rates are not necessarily of concern at this stage. The issue is what is the appropriate rate for plaintiff counsel in the community practicing this kind of law, things of that nature. What did you put in to show what it was? Well, what we put in to show what it was is the way that these plaintiff's attorneys practice this type of law. That's not – they put in affidavits from qualified ERISA counsel that showed the higher rate they – Well, I'd like – So you basically just rely on the judge to cite something that he found in some other case? No. What we did is we took issue with those various declarations. And if we look at those, those are largely boilerplate declarations. Those are declarations from several years prior to the action in this case. They have no specifics as to what occurred in this case, how the law was practiced, how the case was brought up. Well, that goes to hours. What about the prevailing market rate for ERISA attorneys? You may say, well, you may get $400 an hour, but this case was worth about 100 hours of time or less, or 50 hours or 25 hours, and you discount on that side. You want to take them down on hourly rate and then cut them down on hours, too? Yes, sir. The direct answer, Your Honor, to your question is we did not put in specific contra evidence of what plaintiff's counsel in ERISA long-term disability benefits cases are entitled to. We did not do that. Okay. What we did is we looked at the declarations that they submitted in support of their hourly rate, the type of work that this case entailed, the way that this firm practices this type of work, which is boilerplate complaints. That's in the record in front of the court. As the district court also stated, boilerplate discovery, which he had seen before, that's part of his reason for knocking that information out, and the motion for attorney's fees itself, which the district court characterized as boilerplate. So although counsel stood before the court today and discussed how difficult and complex. But what if I have the best, if that's my area of specialty and I have some really good boilerplate stuff, why do I have to? And there are, in certain areas, that people actually spend the time to do certain things that they're going to use and reuse and put in. So, I mean, it seems to me you've got two arguments. You've got that appellants are doing the scorch-the-earth mode of discovery and approach to this, and so they just, you've got to cut the hours is what you're saying. But the weakest part that I see is that, you know, just because you use boilerplate doesn't mean you're not worth $400 an hour. I mean, if it's good boilerplate. Well, one would think as we all develop some measure of expertise, I think you've made a great point, that part of your expertise is I know how to do this, be it ERISO or antitrust or trade secrets or something, and at some point in time, your clients and yourself, you don't want to continue to reinvent the wheel. So there is some element of items that you have used before. I think the issue here is a little bit different, is the boilerplate here, it's identical. If we look at the complaint in this case versus the other complaints that we attach to my declaration in front of the district court, all it's done is substituting names. There are no specific facts. There are no unique allegations. There's nothing along those lines at all. So all it really is, is what was missing that was material. What was missing that was material? Missing from what, sir? The complaint. Well, for example, the specific nature of the disability, the specific nature of the plan terms. Those types of issues were not in the complaint. It was simply, this is the plaintiff, Miss Welch. This is her former employer. These are the various plans we believe are at issue, most of them which were erroneously identified, but I think that's probably not too big of a deal. Well, isn't she going to say, if I were making her argument, isn't she going to say, well, I couldn't put what the term was because you didn't tell me what it was. That's what I had to find out. Sure, but I was just giving a few examples. That happens to be one of them. They certainly haven't. What do you mean, well, sure? You just now said, well, they didn't put in the specific plan. Well, sure, she didn't know it because we didn't give it to her. So what is your argument? Are you acknowledging that you didn't give her what she was looking for so she could be more specific? Oh, sir, no, excuse me, Your Honor, I didn't mean that. I didn't mean to say that I hadn't given her the plan terms. I had meant to say that, oh, sure, she could certainly make that argument that she wasn't aware of the plan terms prior to filing the complaint. What we've seen in ERISA cases, and it happens quite often, is the plaintiff is actually aware of the various terms by virtue of having participated in the administrative process well prior to filing suit. So the plaintiff, in many instances, I see plenty of complaints in this context where the plan terms are described in great detail because by virtue of having participated in the administrative process, that plaintiff has found out and determined what certain pertinent plan terms are. Well, I suspect that your firm and you, as most firms will do in a defense posture, will use boilerplate responsive pleadings that have been developed and honed in the practice of law. I doubt that you reduce your hourly rate for filing an answer, preparing and filing an answer. Presumably what you do is you take it into account in the efficiency. You don't get as many hours because you're not crafting it. So the question is, is boilerplate the reason for reducing the hourly rate, or is it the reason for cutting down on the number of hours? Or do you get them on both ends of the equation? I think we are entitled to get them on both ends of the equation. I believe the district court agrees with that as well. When I was discussing boilerplate, it was part and parcel with why $400 an hour may not be an appropriate rate. And where does the $250 come from? That the district court decided was the appropriate rate? Yes. We suggested a rate between $150 and $200. Based on what? Based on our own experience and history and understanding of the area of the law. The actual rate of $250. How did you present that to the court? Strictly through argument and things of that nature, Your Honor. Is that adequate? Is that how the district court should be making fee decisions based on counsel's argument? I don't know what your practice is. I don't know what you've done. And I have the highest regard for you, Prime Officier. I don't know, though, whether you guys are doing multiple insurance defense claims and have a bunch of low-paid associates or externs or what. So why should I take your argument as opposed to a counter declaration or something that puts it before the trial court in a record that we can then review? It's a fine point. I mean, I think, unfortunately, we've moved a little bit away from the basis for plaintiff's rate and we've started to argue a little bit too much about what perhaps defense counsel's rates are. I'll get to that. No, no, I'm not arguing about defense counsel's rate at all. I'd like to know what the trial court, district court, had before it in evidence where the support's $250 an hour. I don't know where that came from, and you're telling me it probably came from your argument that you offered $125, so he split the difference or whatever. No, no, no. My argument was that, well, initially a few minutes ago, Your Honor, I articulated to you the fact that, yes, we did not put in any counter declarations or any counter support for an hour. I'm aware of that because I didn't see any. That's right. What my arguments were is here's how we explain to the district court judge why $400 an hour is not appropriate, and I gave a few examples. One is boilerplate. Two is the fact that the declarations that plaintiff used in support of their fee motions were antiquated. They did not take any. They may have been understated. Well, no, they may have not had anything to do with what this case is about. We're talking about, for example, one of the declarations is from a. . . Well, that's not. . . I mean, fee declarations, you know, the burden isn't to bring in some lawyer who said I would charge on this case. What they bring them in for is to say I practice in this field of law. This is the hourly rate that I charge for a variety of ERISA cases, and they put in those kinds of standard of reference, not because they weren't trying this particular case. They didn't bring them in to necessarily say I would have gone through all of this and this is how I would have tried the case. I don't think we put that burden on them. They did put in declarations of counsel who are experienced ERISA lawyers. Now, the district court can weigh those and make the adjustments to the case at hand. I fully understand and acknowledge that. But what I'm looking for is where does it go from industry rates of $450 to $400 to $250, except that the judge apparently looked someplace that's not in the record to decide $250 was appropriate. I don't know how to review that. He may have been absolutely correct for correct reasons, but I don't see it, and I didn't see anything in your presentation to put some counter to say, look, we have declarations that show that if you're going to just do boilerplate practice, the going hourly rate is $125 an hour. As I've now acknowledged twice, we didn't. We did not do that. What we said is, Your Honor, based on the declarations and the type of work and these kinds of things, those were our positions. The court, at least in part, accepted that. The court, I believe, also based his decision that the hourly rate of $400 an hour was improper, was based on at least two things. One is he believes it has a contingency multiplier built into it, and he cited a specific case in which these attorneys were in front of him and essentially acknowledged that it included a contingency multiplier. He also based it on the fact that there is no evidence in the record that anyone actually pays those rates. It's a fictional rate apparently created amongst the plaintiff's bar. Well, they all say this is $400 an hour work or $450 or $475, but even opposing counsel has acknowledged both here and in the district court that that rate is not actually paid by their own clients. There's contingency work, and that rate may have a multiplier built into it, which this district court said is improper. I also believe the district court based its determination that the rate of $250 is correct and not $400. It's based on his own experience, custom and practice, lawyers that he's seen in his courtroom, and I think the district court is most likely the most appropriate person to determine what is an appropriate hourly rate in his courtroom. He sees what is certain type of work and certain rates and certain lawyering, and he seems to be the most appropriate one to make that determination. Is there anything in the record that would compare the lawyers that question here with other lawyers that he thinks are worth $400? Is there anything that the district court introduced in that respect? Well, that either sat in the record or, you know, something that you're talking about. No, there is not. I'd like to turn to another issue, and, Your Honor, you brought it up earlier, is rather than your selecting, because you're running out of time, we do have a question that we did pose. It's on the block billing. Yes, sir. So could you explain a response to the question that we posed about relying on the bar study and then, as applied here, why? Well, first of all, let me ask you whether you would agree that not all the billings were block billed. I've gone through them. Maybe we have a different opinion, opposing counsel and I, on what constitutes block billing, but I have approximately 40 entries that are block billed. How does that justify a 20% across-the-board reduction for all billings? Well, I think the reason it's justified is, going back to one of the first things I said in my argument, is that the burden is ultimately on the plaintiff to show that she is entitled to the fees that she seeks, and the burden is to present to the district court evidence and information regarding his or her rates and fees and time incurred. But wait a minute. If I put in bills that are a series of individual line items, attend a scheduling conference, and that took three hours, and I get a 20% reduction for block billing when it's not block billed, why is that fair? Well, that didn't occur here. Well, I thought it was a 20% reduction across the entire billing. Well, I think what the district court was articulating is there are so many entries in these timesheets. Please answer my question. You said you identified a certain percentage of the billings that were, in your opinion, block billed. Yes. All right. Now, I've given an example, which I think is supported by the record, that there are entries which are not multiple entries. They're line items for discrete tax. Now, the district court might find that they're inflated in numbers of hours, but they aren't block billed in any definitional sense of the term. So why is it appropriate for the court, assuming it's appropriate to discount for block billing, which counsel seems to concede, why is it appropriate to do an across-the-board reduction against all billings when not all of them are block billed? Well, I would answer that question this way. The district court relied on a State of California bar analysis. Nobody did. And that goes to whether block billing is a good or bad thing. And as I say, counsel seems to have conceded that block billing is grounds for discounting the fee entry. Here's where I would—the reason I brought that up as kind of a setup to the rest of my response is the analysis from the state bar that the district court relied upon had a range in which block billing may ultimately inflate the total amount of time billed, and that range, I believe, was between 10% and 30%. Well, that's the problem with the study. We don't know what it was looking at. And all that's saying is that in bills that may contain a percentage of block billing, if you take a look at the block billing components, that inflates the overall fees by 20% to 25%. But that doesn't mean the entire individual bill has been inflated by that. You could take out all the block billing and maybe arrive at the same end result. But that doesn't appear to be what happened. I think what the court did is in view of the state bar article, what he did was he picked a middle range. And I believe that he picked that range so that instead of having to go through each and every single entry in the timesheets, which even the two Ninth Circuit decisions that the court indicated it wanted to discuss with us today would not require the district court to do, he picked the middle range of how much block billing could possibly inflate the timesheets. He picked the middle range. I believe he did that so that he wasn't then burdened with having to go through each and every single entry. So he says, well, it's between 10 and 30. That seems to be a fairly reputable study. I think we can acknowledge that block billing is probably less imprecise, excuse me, more imprecise than ordinary billing. So he picked a middle range. And then he had specific examples of block billing that were troubling to him, which, again, complies with the two Ninth Circuit decisions the court wanted to discuss today. And that allowed him to, therefore, take a percentage off of the top of the entire bill rather than go back and look at every single entry and determine if that was appropriate or not based on block billing. And, again, to conclude with that, it's plaintiff's burden to produce that information to the district court, not for the district court to be burdened with a fee motion of having to go through every entry. Okay. I see that my time's up. Thank you, Your Honors. Thank you. Thank you. I think a district court faced with a bill, it's probably not one of the most favorite things a district court has to do, is to go through an ESP bill. I agree. I think we all stipulate that. Well, and I think it's probably safe to say that the district court was annoyed with both of you, both sides in terms of having argued over every single thing and probably couldn't get anyone to agree on anything, and sometimes that happens. Clearly, the district court was annoyed with us, and I take that seriously. But the motion was made, and really, all these objections we're talking about today were not raised by the defendant. They never raised block billing, quarterly hours. They never attacked the particular items that the judge had trouble with. They talked about the hourly prevailing rate but didn't submit any evidence. They basically said we shouldn't get any fees at all. And then the judge didn't hold a hearing. So to a certain extent, we were unable to help. You know, if we see an objection, one of the cases that I cited to the court, a more recent case that I put into the court yesterday, I think you should have a copy today, is the Cortez case, which was also a MetLife case, which is about fees. And MetLife raised what had happened in this case. And the issues of block billing and the issues of quarterly hour increments were able to be addressed by the parties, considered by the district court, and with a full record. Well, I'm wondering on the block billing part of it, since they're not all block billed, but there were some that were block billed. And the court did look at a study. And the court, I think, did pull out at least one of the block billed and looked at that individually and found it to be too much. So on that portion of it, why would that be an abuse of discretion? That portion of it, pulling that item out? Well, but looked at a little bit of the block billing, looked at a study. And, I mean, it didn't just say, hey, I think I'm just pulling 20% out, you know. Looked at the study and what the study had found. So, you know, like reading a law review article or what's going on out there and educating yourself. And actually looked at a portion of the block billing and found that to be in, you know, I think that's too much time that was spent here and probably reduced that one by 50%. But then only put 20. Now, don't count the other ones that aren't block billed. Okay. But why wouldn't 20% just to the block billing ones, why wouldn't that not be an abuse of discretion based if that's the approach that you take? I think because the study is really just a paper and there's no support for the numbers used. So I understand the district court maybe found somebody who said something and relied on it. But you have to go and look at what that report says. It's an unsupported statement. It's not backed up by any kind of surveys or any kind of information from law firms, actually. It's just a number that somebody wrote. Well, it may be just a number, but if the district judge is not in a position to be an expert in every line of profession, professional experience that comes before the court, so the district court has to, given the plaintiff's somewhat opaque billing, find ways to come to a fair amount based on the court's experience and the sense of what went on in the case before it. So as counsel just argued, what is wrong with the district court saying, look, here's a study by State Bar that puts its imprimatur on it, at least. That's some benchmark. Why isn't it appropriate for the court to say, look, I'm not going to go through and try and parse out 20 to 40 what I consider block-billed entries, as counsel said. There's an inflation caused by block-billing, in my view. There's an imprecision on the part of the plaintiff's counsel. Therefore, I will come up with a fair number to reduce it. How does that disadvantage you any more than what you seem to have acknowledged, is going through and saying, I find some number of block-billed entries. I can't figure it out, so I'm going to reduce them down to 10% of the time times the hourly rate. So the net effect could well be you either get 20% reduction across the board or you wind up with a 20% reduction because of this other number, a 10% number that he's picked out. So what's the principle distinction between the two? I don't think there is the way you've presented it. I think the judge can either do one or the other. Here he seems to have found the only identified one block-billing entry that bothered him at the outset and cut it. If instead he wanted to find the block-billing entries and use a number against those entries, we probably wouldn't have appealed if he had done that. So you're just quarreling with the fact he only cited one block-billing entry? No. You know, honestly, Your Honor, what we're quarreling with the fact is the prevailing market rate. I mean, really, that's what this is all about. As far as the block-billing is concerned, I think that your obligation under Gates and Furlan is to look at the bill. He did that. He found an entry he didn't like. He cut it. To then go and take a 20% across all the entries, as Your Honor has pointed out, even the ones without block-billing, was an abuse of discretion. Okay. All right. I think we have your argument. If I have a few more minutes, if I could just touch... You don't. That's not... Oh, I'm sorry. Is it back? You're in the red by three minutes. Thank you. That's what I warned you all about. It's tricky. Thank you very much. It's an interesting case, and we appreciate counsel's arguments.
judges: Fisher, Callahan, Collins